In the Matter of Donald L. AVIS, Ada M. Avis, Debtors.

Bankruptcy No. 3–79–01887.

United States Bankruptcy Court, S. D. Ohio, W. D.

March 12, 1980.

Jack P. Reynard, Jr., Springfield, Ohio, for debtors.

Barry P. Reich, Springfield, Ohio, for Intern. Harvester Emp. Credit Union.

James R. Warren, Springfield, Ohio, Trustee.

## DECISION AND ORDER

### PRELIMINARY PROCEDURE

CHARLES A. ANDERSON, Bankruptcy Judge.

This matter is before the court upon a motion filed on 20 February 1980 by International Harvester Employee Credit Union, later joined by Debtors approving a reaffirmation agreement, pursuant to 11 U.S.C. § 524(c).

### FINDINGS OF FACT

On November 2, 1979, the debtors filed their petition and schedules listing assets totalling $10,950.00 all of which were claimed as exempt.

The only income that Donald L. Avis receives is disability retirement from International Harvester, Springfield, Ohio. At present, that disability income amounts to approximately $710.00 per month.

Ada M. Avis had been a part time employee of J. C. Penney Company, Upper Valley Mall, Springfield, Ohio, although at present, she is not regularly employed.

The schedules of creditors listed the following claims against the debtors, to-wit:

One secured claim (homestead), totalling $24,700.00.

Thirteen unsecured claims without priority, totalling $11,813.35.

Among the unsecured claims scheduled were two loans; one by The Springfield Bank with a balance due of approximately $5,000.00 and one by the International Harvester Employee Credit Union with approximately a $4,300.00 balance due. Both loans were made with co-signors.

On December 27, 1979, the debtors amended their schedule of creditors by adding two debts that totaled $6,600.00, for which they were obligated as co-signors.

On February 20, 1980, International Harvester Employee Credit Union filed a motion for court approval of a reaffirmation agreement, pursuant to Title 11, United States Code § 524(c) regarding the debtors' loan for $5,486.82 (which then had a $4,342.26 balance due).

During the discharge hearing held on February 22, 1980, the debtors stated that their sole reason for agreeing to the reaffirmation of the credit union loan was because they had caused friends to be obligated as co-signors for the debt.

CONCLUSION OF LAW AND FACT

The single issue in this case is whether the debtors' reaffirmation agreement with the credit union should be approved as being in the debtors' "best interests". Title 11 U.S.C. § 524(c) governs court approval of the submitted agreement, as follows:

". . . (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable . . ., only if—

. . . (4) in a case concerning an individual, to the extent that such a debt is a consumer debt that is not secured by real property of the debtor, *the court approves such agreement as* —

*(A)(i)* not imposing an undue hardship on the debtor or a dependent of the debtor; and

*(ii) in the best interest of the debtor* . . . ."

The pivotal question presented by § 524(c)(4)(A) is the meaning of a debtor's "best interests", as a matter of law. No specific interpretation of the term is provided by the Code and no direct reference was found in the legislative history. However, the history of the development of the present § 524 and the wording of other Code Sections do provide strong guidance and do support the interpretation that financial or economic concerns of the bankrupt should be paramount, if not exclusive.

Enforceability of a claim is the basic issue controlled by § 524(c) and (d). The present wording of these subsections is the result of compromise reached between the Senate and the House of Representatives just prior to passage of the Bankruptcy Act of 1978. *(124 Cong.Rec H 11,096, Sept. 28, 1978, S 17,413, October 6, 1978).* In its original Bills the House disallowed reaffirmation or renewal of any extinguished debts *(H.R. 31 § 4–507 and H.R. 32, § 4–507).* On October 28, 1977, the House approved H.R. 8200 with § 524(c) allowing only two exceptions to that ban, namely:

1. In settlement of litigation under § 523, and

2. An agreement providing for redemption under § 722.

Arguing in opposition to that strict limitation, the consumer finance industry proposed allowance of any *voluntary* repayment by the bankrupt (Cong.Rec. S 14,723, Sept. 7, 1979). However, since enforceability of an agreement was at issue, and should any subsequent default occur on an approved claim, the courts would be required to force repayment and voluntariness would disappear. With this possible result in mind, the Senate proposed an amendment to § 524 that was designed to make possible a truly voluntary reaffirmation without eroding the effectiveness of bankruptcy relief. That effectiveness was dependent on compliance with three basic principles, namely:

1. to give the bankrupt a "fresh start",

2. to discourage bankrupts from immediately seeking credit, and

3. to treat all creditors substantially alike (Cong.Rec. S 14,743, Sept. 7, 1978).

The apparent intent of the Senate then was that the easing of the ban on reaffirmations was to be viewed collectively with the stated principles underlying bankruptcy relief. Hence the inescapable conclusion is that the intended meaning of a debtor's "best interests" are strictly financial or economic.

The proposed Senate amendment to § 524 was the final compromise adopted into the Bankruptcy Code of 1978. No other consid-

eration was found in the legislative history which would support any other interpretation.

Probably the strongest non-financial interest that possibly deserves consideration is presented in this case. Pressure to reaffirm an agreement is exerted on the bankrupt by the existence of co-debtors on the claim. That pressure will necessarily influence any decisions by the bankrupt, and the character of the relationship between the co-debtors and the bankrupt.

This may appear to be valid and acceptable, until the principles underlying bankruptcy relief stated in Congress are applied. Court approval of an agreement because of the existence of a co-debtor would weaken the "fresh start" for the bankrupt. Also, any other unsecured creditors would not be treated substantially the same. Court disapproval on the other hand, would secure the effectiveness of discharge relief while not denying the bankrupt an opportunity voluntarily to pay the debt to either the creditor or to a co-debtor. The claim would just not be enforceable against debtors if or when future circumstances might change, such as the death or insolvency of the co-debtor.

Indirectly, other Sections of the Code address the problem of pressure on the bankrupt resulting from the existence of a co-debtor. § 524(e) states that the discharge of a debtor does not affect the liability of any co-debtor. § 362 imposes an automatic stay of action against a debtor upon the filing of a petition under Chapter 7, 9, 11, or 13, but not against co-debtors. § 1301(a) does impose a stay against co-debtors but lifts the stay when the case is closed, dismissed, or converted to a Chapter 7, or a Chapter 11 case.

All these ancillary sections of the Code show some slight congressional concern for the co-debtors. Only in Chapter 13 cases is the co-debtor insulated by a stay of action by a creditor, and that protection is incidental and temporary. The stay is designed to protect the debtor from creditor and co-debtor pressures while financial affairs are being rearranged. No intent is shown to deprive creditors of any rights, other than to delay enforcement of a claim against co-debtors.

In this case, the debtors have stated that their sole reason for agreeing to the reaffirmation was the existence of co-debtors. The amount of the proposed reaffirmation is more than one third of the total listed unsecured claims against them. Another claim with co-debtors obligated ($5,000.00), is not proposed for reaffirmation. Approval of the submitted reaffirmation would violate the basic principles guiding bankruptcy relief, the effectiveness of discharge would be weakened; and all creditors would not be treated substantially alike. No sufficient reasons have been presented to justify approval or to override the debtors' financial consideration. Therefore the court will not render the credit union claim enforceable.

Obviously, the debtors may, nevertheless, voluntarily pay the debt to either the creditor or to the co-debtors, although not legally obligated and subject to future legal actions.

*ORDERED,* that reaffirmation of the debt to International Harvester Credit Union by Donald L. Avis and Ada M. Avis should be and is hereby denied.