**In the Matter of Judith Anne JONES, Debtor.**

**Judith Anne JONES, Plaintiff,**

v.

**SPRINGFIELD CITY SCHOOLS CREDIT UNION, Defendant.**

**Bankruptcy No. 3–80–02190. Adv. No. 3–80–0515.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Oct. 14, 1980.

Panavotis F. Pappas, Springfield, Ohio, for debtor.

James R. Warren, Springfield, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FACTS

This 'matter is before the court upon an action for declaratory judgment filed by the Debtor, Judith Anne Jones, on 14 August 1980.

Debtor lists as one creditor the Springfield City Schools Credit Union. The debt owed is in the amount of $1,000.00, which is an unsecured claim.

The parties request a "clarification" of 11 U.S.C. § 524. The Debtor "feels a moral obligation to pay this debt, even though it is unsecured, because of the assistance she has received from the creditor when she was having financial difficulties."

The proposed repayment "will be made after the conclusion of the bankruptcy and in an amount that the debtor feels she can afford to pay. In the event that the debtor should anytime in the future feel that she can no longer afford to pay on the debt, she could cease payment and the creditor would have no recourse."

The parties are concerned whether or not it is a violation of the effect of a discharge enjoining "any act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived ..." *11 U.S.C. § 524(a)*.

The Debtor does not believe or represent that a court approved reaffirmation would not impose an undue hardship on herself, and, therefore, does not seek court approval. Similarly, she cannot waive her right to a discharge under 11 U.S.C. § 727(a)(9).

### DECISION

When the Congress broadened Bankruptcy Act § 14(f) "to cover any act to collect, such as dunning by telephone or letter, or indirectly through friends, relatives, or employees, harassment, threats of repossession, and the like....", it was expressly ... "intended to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it. In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that." See House Report No. 95–595, p. 366, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6321.

The abuse of debtors' rights under discharges in bankruptcy issued pursuant to the former statutes were so widespread that the original version of Senate Bill 2266, which evolved into Bankruptcy Reform Act of 1978, would have prohibited all reaffirmation agreements. During the floor debates, the very crux of the problem was ably presented (on amending the Bill to permit limited reaffirmations, but permitting debtors 30–days to reconsider and thereby to avoid abuses by creditors).

A few short excerpts from the Congressional Record, Vol. 124, No. 138, S 14722–14724 (September of 1978) illustrate the firm commitment to preventing reaffirmations without court approval. For instance,

by Senator DeConcini of Arizona, at S 14724 (speaking for the original version, not to permit any reaffirmations) the thesis is presented, as follows:

"Under the current Bankruptcy Act, the effect of a discharge has generally been governed by State Law . . . . It does not forbid collection of a debt, nor does it erase the debt. The moral obligation to repay the debt remains, and is a valid consideration for a new promise to repay. Thus, unsuspecting debtors are led into binding reaffirmations, and the beneficial effects of a bankruptcy discharge are undone. The advantages sophisticated and experienced creditors have over unsophisticated debtors in this area were lessened by the 1970 amendments to the Bankruptcy Act, but some still remain. The unequal bargaining position of debtors and creditors, and the creditors' superior experience in bankruptcy matters still lead to reaffirmations too frequently . . ."

"The Bill makes void any agreement that contains a reaffirmation of a discharged debt, and prohibits a creditor from entering into such an agreement. The consumer finance industry strongly opposes the provisions. It has argued that debtors frequently voluntarily repay debts, and that debtors should not be prohibited from repaying discharged debts, out of a sense of moral obligation or for other reasons. 'Voluntary', however, is somewhat euphematic . . ." [sic].

Speaking for limited reaffirmations under court supervision, and with a 30–day rescission period thereafter, Senator Bartlett, of Oklahoma, points up the necessity of reaffirmations for such reasons as to save the debtor's home, non–exempt personal property, and all intangible property. He further emphasizes at S 14722–23 as follows:

"The record clearly shows that a major percentage of consumer bankruptcies are caused by a single, over–whelming debt such as a medical bill. Debtors may seek relief from such crushing medical expenses but wish to honor other obligations and retain their credit worthiness

with those whom they have dealt with in the past–and with whom they wish to deal in the future. The committee bill denies consumers the right to voluntarily and selectively reaffirm. It denies consumers the right to dispose of their future income as they see fit. There is no justification for this interference. It smacks of paternalism."

Turning to the Code as finally enacted, § 524 now establishes parameters for reaffirmation agreements by court approval under very limited circumstances, with the 30–day rescission period, urged by the opponents of the original Bill voiding all reaffirmations.

The parties *sub judice* now propose to participate in a debt repayment because of a "moral" obligation. Apparently, they have concluded that the morality involved is not sufficient to justify a court approved reaffirmation agreement (and thereby legally binding) but that the reason for repaying one debt is more moral than the moral obligation to pay the other creditors whose debts are discharged.

 This court is constrained to concur in the thought that it would be an excess of "paternalism" to purport to dictate how the debtor spends her money upon termination of the bankruptcy proceedings. The conclusion is certain, nevertheless, that the "voluntary" payments made to the Springfield City Schools Credit Union can never constitute a revival of the debt under any state law; and, whether the payments are made before or after the discharge is immaterial. The contract between the parties is completely discharged and invalidated. A discussion and annotation of case precedents in Ohio may be found at *3 O.Jur.3rd Contracts § 62* and need not be labored herein. See also *9 Am.Jur.2d Bankruptcy §§ 824–831.* The validity of reaffirmation agreements is now controlled exclusively by federal law under *Article 1, § 8, Cl. 4 of the U.S. Constitution.*

The practicability of the question posed is probably of more significance than the legality. Obviously, no justiciable issue can

ever arise so long as the parties remain in their present state of morality, and the matter would never be litigated.

Since the creditor has no legal rights to litigate, obviously the matter could only be made justiciable by the debtor. Under such changed circumstances, it is the opinion of this Court that the burden of going forward to justify the receipt of payments on a discharged debt would rest with the Creditor, in view of the rights of the Debtor and the final injunction under 11 U.S.C. § 524(a)(2), against all "acts" to collect. There being no valid legal consideration for such payments, and "moral" consideration under state law having been abolished, it would appear that any demand for reimbursement made by the Debtor must be honored by the creditor, if seasonably made and not barred by equitable principles, such as laches. In this regard, it must be concluded that the "moral obligation" runs to both parties and is equally applicable. Collecting a debt discharged in bankruptcy cannot be glossed over by semantics. If a debt is paid which would not have mustered court approval by the reaffirmation process, court sanction should not be expected in case the debtor later seeks restitution.