**In the Matter of Joseph S. GRIFFIN, Jr., Mildred D. Griffin, Debtors.**

**AMERICAN EXPRESS COMPANY, Plaintiff,**

v.

**Joseph S. GRIFFIN, Jr., Mildred D. Griffin, Defendant.**

**Bankruptcy No. 3–81–01266.**

United States Bankruptcy Court, S. D. Ohio, W. D.

July 31, 1981.

592

Paul Balash, Cincinnati, Ohio, for creditor.

Anthony Capizzi, Dayton, Ohio, for debtors.

Herbert Ernst, Dayton, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FACTS

The Debtors filed a joint petition in bankruptcy on April 28, 1981, listing American Express as an unsecured creditor in the amount of $1165.39.

This matter came on for hearing on July 23, 1981, upon an application in behalf of Debtors, Joseph S. Griffin, Jr. and Mildred D. Griffin, for approval of a reaffirmation agreement signed under date of July 11, 1981 with American Express Company.

The agreement was signed by Mildred D. Griffin, personally, and for Joseph S. Griffin (who did not sign).

The agreement in question was for $240.00, reciting in pertinent part that, "Creditor agrees to accept said payment as total settlement, return Mr. Griffin's personal check written in the amount of Two hundred and Forty ($240.00) Dollars and to not file charges against Mr. Griffin for violation of ORC 2913.11."

In fact, it was represented at the hearing that American Express had never filed any charges against Mr. Griffin pursuant to the Ohio statute mentioned. Further, no complaint objecting to the discharge under 11 U.S.C. § 727(c)(1) or to determine the dischargeability of the debt pursuant to 11 U.S.C. § 523(c) was filed in the bankruptcy court, the last day fixed for filing such complaints having expired on July 10, 1981.

### DECISION

Ohio Revised Code § 2913.11 imposes criminal sanctions for "passing bad checks". Violation is a misdemeanor of the first degree for a first offense, carrying a term of imprisonment not more than six months.

The statute of limitations for a minor misdemeanor is six months. Ohio Revised Code § 2901.13.

It is a subject of common and general knowledge that creditors regularly collect debts in Ohio by the indirect method of exerting pressures of threatened criminal prosecution. In many rural counties, this practice is encouraged by prosecuting attorneys who make a practice of regularly assisting creditors to obtain monetary satisfaction by bringing "bad check" charges, which are dismissed upon payment. It is not uncommon for a single "bad check" charge to be thus utilized to collect for a series of such debts by obtaining a guilty plea to one charge and then seeking probation upon payment of the other "bad checks" for other creditors. The propriety of such collection methods, nevertheless, is not now at issue.

Rather, the question is whether this court should condone or participate in the practice by the reaffirmation process enacted in 11 U.S.C. § 524.

It is acknowledged that the restrictions imposed in the 1978 Code were designed to permit truly "voluntary" reaffirmations, but to otherwise strike down epidemic creditor abuses long observed so as to obtain a truly effective fresh start for debtors. H.Rept.No.95–595, pp. 163–164, U.S.Code Cong. & Admin.News 1978, p. 5787, Bkr.L. Ed., Legislative History § 82:4.

The justiciable aspects require a finding by the court that the agreement does not impose an undue hardship on the debtor and is in the debtor's best interests, or is a good faith settlement of litigation to determine dischargeability.

This statutory endeavor to permit "voluntary" reaffirmations, while semantically artistic, inadvertently but practically reinstates those abuses historically rampant. Artful persuasion and "moral" obligation was always the weapon in hand to induce "voluntary" renewals of a portion or all of a debt. Perhaps, if there is truly any beneficial change, the disapproval by the court merely means that such a debtor will not be

legally obligated to make repayments by formal legal procedures. The fiction of the statute does not preclude "voluntary" payments beyond the scope of bankruptcy court sanction. See decision by this court *In re Avis* (Bkrtcy.1980) 3 B.R. 205, 6 B.C.D. 83, 1 C.B.C.2d 617, C.C.H.Bankr.L.Rptr. 67368. Perhaps, on final analysis, the quandary of the protection of the "fresh start" depends upon the sincerity and acuity in particular cases of the debtor's legal advisor and the debtor's inclination to seek advice.

As this court is of the opinion that post-discharge collection procedures are a violation of a debtor's discharge rights on the facts *instanter*, (whether termed "criminal process" or "civil process"), we feel constrained not to participate in any vain subterfuges. Furthermore, logic is fractured by permitting the debtor's wife to be obligated on reaffirmation of a discharged debt, for which she was *never obligated*.

In cases such as now *sub judice*, perhaps the dilemma gives rise to principles previously expressed (not without scholarly repercussions) that the "voluntary" repayment of discharged debts does not necessarily obviate judicial scrutiny. See decision *In re Judith Ann Jones*, (Bkrtcy.1980) 6 B.R. 336, 6 B.C.D. 1115. If we proceed from the assumption that the debt is completely discharged and thereby invalidated, but that the debtor is induced by pressure exerted to make "voluntary" repayments, the questions of deviousness or subterfuge should remain under the bankruptcy court countenance. Subsequent legal action by a debtor to demonstrate that "voluntary" repayment is a misnomer, that is, in fact not voluntary, such fact should be justiciable. Conversely, if a debtor remains convinced that repayments are truly "voluntary", judicial scrutiny would never be sought.

It is accordingly, ORDERED, ADJUDGED AND DECREED that reaffirmation of the debt of the American Express Company is not in the best interests of Joseph S. Griffin, Jr. and Mildred D. Griffin and approval is denied.