Orville L. **LAWSON**, Thelma R. Lawson, Plaintiffs,

v.

Agnes **BOCZONADI**, Defendant.

In the Matter of Orville L. **LAWSON**, Thelma R. Lawson, Debtors.

Bankruptcy No. 3–81–02416.
Adv. No. 3–82–0282.

United States Bankruptcy Court,
S. D. Ohio, W. D.

May 21, 1982.

Gregory Lockhart, Asst. Prosecutor, Xenia, Ohio, for defendant Agnes Boczonadi.

David E. Larson, Dayton, Ohio, for plaintiff/debtor.

George Ledford, Englewood, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

## PRELIMINARY PROCEDURE

This matter is before the Court upon Debtors' Application for Temporary Restraining Order and/or Preliminary Injunction prayed for in conjunction with Debtors' Complaint filed on 12 May 1982. The Court approved the Temporary Restraining Order on 13 May 1982, and conducted an emergency hearing on 18 May 1982 on the question of the preliminary injunction, submitted post-trial legal memoranda, and jointly submitted certified copy of the state court pro- ceedings in issue, of which this Court took judicial notice. The following decision is based upon the evidence adduced at the hearing, the parties' memoranda, and the record. The respondent creditor of Debtors, and prosecuting witness, has filed no responsive pleadings and has entered no appearance.

## FINDINGS OF FACT

This matter concerns a post-Petition criminal prosecution under Ohio Revised Code § 2913.11(A) against Debtor Lawson for a dishonored check written on 6 October 1980, and rewritten on 4 November 1980, in the amount of $2,849.80. The criminal action is being maintained by the Office of the Greene County Prosecuting Attorney, and Defendant plans to testify as a witness therein. The basic issue in the criminal prosecution is whether Mr. Lawson issued the check with "purpose to defraud." O.R.C. § 2913.11(A).

The subject check was written in the course of Debtors' business, known as Lawson's Auction Barn. Mr. Lawson is an auctioneer and Debtors jointly handle their business finances, with primary responsibility by Mrs. Lawson. The check named Defendant as payee, and Mr. Lawson as drawer, though Debtors are unsure which Debtor actually signed since Mrs. Lawson frequently signed for Mr. Lawson (with his consent). Debtors do not deny liability on the transaction underlying the check.

Defendant duly negotiated the check, but it was dishonored by the drawee-payor bank because of "insufficient funds." The evidence before the Court, however, casts serious doubt that Debtors possessed any intent whatever to defraud the Defendant/Creditor. In fact, Debtors submitted a detailed account ledger indicating that, according to Debtors' records, their account was not overdrawn during October of 1980. The evidence demonstrates that the reason the check "bounced" was because Debtor deposited four checks drawn to his order, totalling $3,725.74, into Debtors' account, which were subsequently returned for insufficient funds and charged against Debtors'

account. This conclusion is substantiated by bank notices dated the 8th, 10th, 11th, and 25th of October, 1980; and, the Court notes that there was no evidence presented even intimating that Debtors had any reason to anticipate that checks deposited in their account would be dishonored. The Court also notes that, had the four checks not been dishonored, Debtors' account apparently would have had sufficient funds to cover the instant check. It is the opinion of the Court that the evidence of record indicates that the instant bad check is merely a result of usual business conditions existing in a legitimate business enterprise which was drawing checks on an account which, on hindsight, was depleted by receipt of bad checks obtained in the running of the business.

The evidence of record further indicates that Debtors acted in good faith throughout their dealings with Defendant. During the relevant time period, Debtors were operating a failing business which was crippled by delinquent account receivables due, in part, to dishonored checks such as those which resulted in insufficient funds in Debtors bank account. The Court notes that Debtors attempted to establish alternate arrangements for payment to Defendant, and that in early 1981 Debtors paid Defendant $500.00. The Court further notes that this amount has not been credited to the delinquency alleged due to Defendant/Creditor in the criminal action. Further, the record indicates that Debtors have made conscientious efforts to pay all available funds to all creditors through the 11 U.S.C. Chapter 13 process, and have not attempted to avoid creditors, conceal property of the estate, or abscond to avoid judicial process.

Debtors filed their Petition in this Court on 15 September 1981. Debtors' Schedules list Defendant (though misspelling her last name, "Boczoni") as an unsecured creditor on the basis of a "returned check" in the amount of $2,349.80. The parties do not dispute that Defendant received notice "on or about" 30 September 1981 of Debtors' Petition filing. Defendant has never attempted to litigate in the bankruptcy court the dischargeability of the subject debt;

nor did she ever appear to contest confirmation of the Chapter 13 Plan.

The possibility of criminal action was threatened by Defendant prior to Debtors' Petition for an order of relief in the bankruptcy court. Defendant wrote to Debtors on 4 March 1981, and admonished that:

I need the money and insist that I get the balance by the end of March [1981], otherwise I shall turn the matter over to the sherriff [sic] to prosecute. Your immediate attention to this matter will be to your benefit and a reply is urgent.

On 11 June 1981, Debtors then received a letter from the Office of the Prosecuting Attorney of Greene County by Gregory G. Lockhart, Assistant, advising that:

This office has been contacted regarding a check you wrote to [Defendant] on October 6, 1980 and November 4, 1980. The check is in the amount of [$2,849.80] were returned for insufficient funds [sic]. You have since been given notice that these checks bounced and have failed to make these checks good. Under Ohio Revised Code Section 2913.11(A) you can be charged with a Fourth-degree felony punishable by up to five (5) years in prisons [sic] for this act.

This letter is basically your last warning to take care of this check. You contact either Sergeant Stanley of the Greene County Sheriff's Department or this office no later than Friday, June 19, 1981, and take care of this matter. Should we not hear from you by that time charges will be filed against you and a warrent [sic] for your arrest issued. . . .

The criminal prosecution, however, was not commenced until 24 September 1981, eight days after Debtors' Petition in the bankruptcy court. In this regard, the Court notes that Defendant neither personally appeared nor offered explanation regarding her intent in pursuing the criminal matter, though the Court further notes that Debtors' attorney indicated that the criminal proceedings (although post-Petition) involved discussion of "settlement" by restitution of the debt, a subject even discussed

at a pretrial conference. This allegation was indirectly contested by Mr. Lockhart of the Office of the Greene County Prosecuting Attorney, who posited that the purpose of the prosecution was exclusively to determine criminal liability, and did not contemplate restitution of the debt, although no evidence was submitted accordingly. Even though such a purpose was denied, Mr. Lockhart had previously declared for the record that he represents the prosecuting witness in these proceedings, who did not appear to testify in her own behalf.

It is further important to note that the Prosecuting Attorney never sought leave of the Bankruptcy Court to institute the "bad check" charge, even though such action would obviously interfere with the federal court jurisdiction over the Chapter 13 estate, the Debtors, and payment to all other creditors involved, as a matter of comity, if for no other reason, even though involving a debt scheduled in the Chapter 13 case.

## DECISION

The issues raised by the matter *sub judice* have been the subject of extensive litigation throughout the country, and case precedents afford extensive analysis of and pronouncements on the law involved, despite expressions of excess righteous indignation by the Assistant County Prosecutor.

No purpose will be now served in digesting these case precedents at length, even though cause exists to stay the prosecuting attorney and creditor/prosecuting witness from proceeding with what is on the facts *instanter* obviously a patent abuse of the criminal process.

The extensive number of reported cases is indicative of the extent of the attempted abuse of the criminal process in other jurisdictions. See for instance, *In Re Caldwell* (Bkrtcy.W.D.Va.1980), 6 B.C.D. 892, 5 B.R. 740, B.C.D. ¶ 67,664, 2 C.B.C.2d 1178; *In Re Penny* (W.D.N.C.1976), 414 F.Supp. 1113; *In Re James* (Bkrtcy.W.D.N.C.1980) 10 B.R. 2, 2 C.B.C.2d 322; *In Re Taylor* (Bkrtcy.D. Md.1981), 8 B.C.D. 692, 16 B.R. 323, B.L.D. ¶ 68,526; *In Re Wagner* (Bkrtcy.Mo.W.D. 1982) 8 B.C.D. 1065, 18 B.R. 339; *In Re Lake* (Bkrtcy.S.D.Ohio, 1981), 11 B.R. 202; *In Re Strassmann* (Bkrtcy.E.D.Pa.1982), 18 B.R. 346; *In Re Anson* (Bkrtcy.W.D.Mo. 1981), 9 B.R. 741; *In Re Barnett* (Bkrtcy.D. Kan.1981), 15 B.R. 504; *In Re Whitaker* (Bkrtcy.N.D.Tenn.1982), 16 B.R. 917; *In Re Davis* (D.Del.1982), 18 B.R. 701. See decision by this Court *In Re Griffin*, 13 B.R. 591, B.L.D. ¶ 68,317, 4 C.B.C.2d 1507 (Bkrtcy.Ohio 1981).

Quoting Judge Sidman, of this District from *In Re Lake*, 11 B.R. 202 (Bkrtcy.S.D. Ohio 1981)

"It is quite apparent in this case that the criminal proceedings against the Lakes were not instituted to vindicate the rights of the people of the State of Ohio. They were instituted in order to collect a bad check debt . . . offered to drop the criminal charges if the checks were made good and the $10.00 service charge for each check were paid [which] . . . constitute an impermissible and unlawful infringement upon the benefits granted to a debtor in seeking the protection of a bankruptcy court by the filing of a Chapter 13 petition." Quoting from *In Re Penny*, 414 F.Supp. 1113, 1115 (W.D.N.C.1976) Judge Sidman continues, " 'Moreover, regardless of motive, the effect of the proceeding is to put the bankrupt in the position of conflicting duties. On the one hand, the bankruptcy court will order him to pay only a fraction of the debt, if it is dischargeable. On the other hand, the State court has ordered him to pay it all, or go to jail. This is exactly the situation Rule 401, and the underlying statutes, were designated to prevent. If the criminal action is allowed to proceed, the jurisdiction and judgments of the bankruptcy court will be wholly frustrated. Moreover, given the history of the matter, the criminal proceedings ought not go forward regardless of the sentence, or any change in it, because the same purpose could be achieved if a sentencing judge, or probation or parole officer, took repayment of the debt into account when dealing with Penny. The only way to insure effectuation of the judgments of the

bankruptcy court is to enjoin permanently criminal proceedings founded on this debt against Penny.' "

Under Article 1, Section 8 of the United States Constitution, reserving exclusive jurisdiction to the federal government over bankruptcy proceedings, the foregoing *rationale* is inescapable.

The problem of unscrupulous prosecutions on "bad check" charges in order to circumvent the purpose of the bankruptcy law in enforcing the traditional American philosophy of granting every deserving citizen, and his family, a "new opportunity in life and a clear field for future effect, unhampered by the pressure and discouragement of preexisting debt," (Note: *Local Loan Co. v. Hunt* (1934), 292 U.S. 234, at 244–245, 54 S.Ct. 695, at 699, 78 L.Ed. 1230 and *Lines v. Frederick et al.* (1970), 400 U.S. 18, 91 S.Ct. 113, 27 L.Ed.2d 124), has been dealt with by bankruptcy courts in other states by various means and approaches, including injunctions against the prosecuting authorities.

This Court has every reason to believe and feels comforted and confident that the state court will grant a fair trial; and, the civil process remains with Debtor to seek monetary damages and proper restitution, if necessary, in either the state court or the bankruptcy court for any tort stemming from malicious prosecution, if found to exist. See decision by this Court in *Campbell v. Gerace*, 13 B.R. 575 (Bkrtcy.Ohio 1981).

■ Based upon these assurances, therefore, the conclusions hereinafter are reached, because it should not be the function and purpose of the bankruptcy court to interfere with the jurisdiction of the state court in criminal prosecutions, in the absence of any showing of irreparable injury or the statutory criteria enunciated in aid of federal court jurisdiction by 28 U.S.C. § 2283.

The Debtor will be protected in the state court by application of the evidentiary rule requiring proof "beyond a reasonable doubt" that there was "a purpose to defraud," as specified in Ohio Revised Code § 2913.11. This evidentiary burden is even more stringent than the test applicable in the bankruptcy court upon a trial of the dischargeability of the debt.

■ Hence, by employing the general injunctive jurisdiction of 11 U.S.C. § 105 this Court can devise and implement a proper order so as not to interfere with the jurisdiction of the state courts in the pending criminal prosecution, even though pursued with arrogant disregard of traditional rights of the debtor under federal law enacted pursuant to Article 1, Section 8 of the United States Constitution.

Inasmuch as the temporary restraining order has accomplished the purpose of bringing the state criminal prosecution to the attention of the bankruptcy court and it has been found that Debtor can be adequately protected without the necessity of extending the temporary order by a temporary or permanent injunction, and rather than enjoin the prosecuting witness (or the prosecuting attorney, as in numerous reported cases), the following necessary or appropriate orders are issued, to-wit:

ORDERED, ADJUDGED AND DECREED that the creditor, Agnes Boczonadi, should not be enjoined from testifying in the pending criminal case, if subpoenaed by the office of the Prosecuting Attorney.

ORDERED, ADJUDGED AND DECREED that Agnes Boczonadi, be enjoined from receiving, accepting or otherwise personally profiting from any funds derived from or through the pending criminal proceedings.

ORDERED, ADJUDGED AND DECREED that any funds paid by court authorization from the Chapter 13 estate for attorney's fees and costs in defending Debtors in the criminal proceedings be withheld by the Chapter 13 Trustee from any distributions payable to Agnes Boczonadi to protect the other creditors/distributees from invasion and depletion of the estate, unless and until it has been duly established in the bankruptcy court that the debt should not be discharged, conformably to the statutes in such cases made and provided.

ORDERED, ADJUDGED AND DE-CREED that all monetary damages awarded to Debtor by the bankruptcy court or a state court against the creditor or the public officials (conformably to principles enunciated in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90), in an action for malicious prosecution, if any, shall be deemed property of the Chapter 13 estate until the claims of all creditors entitled to distribution have been paid in full under either Chapter 13 or Chapter 7 of the Bankruptcy Code.