**In re Arthur T. GOODMAN and Dolores A. Goodman, dba AAMCO Transmissions of Bend, Debtors.**

**Bankruptcy No. 382–01577.**

United States Bankruptcy Court, D. Oregon.

Aug. 31, 1983.

Carl W. Hopp, Bend, Or., for debtors.

William M. Holmes, Bend, Or., for Bill W. Lee.

FINDINGS OF FACT AND CONCLUSIONS OF LAW FINDING BILL W. LEE IN CONTEMPT, ASSESSING $3,500.00

DONAL D. SULLIVAN, Bankruptcy Judge.

The Court on August 19, 1983 in Bend, Oregon tried the debtor's motion to hold Mr. Bill W. Lee, the defendant, in contempt for causing the debtor's arrest on NSF check charges after liability on the checks had been discharged in bankruptcy. Carl W. Hopp represented the debtor. William M. Holmes represented the defendant. Mary Bleile reported the major part of the proceedings and Liz Meacham reported testimony of one witness which was taken by telephone conference call on August 22, 1983.

I find that the defendant knowingly and with intentional disregard of applicable statutory injunctions committed acts which constitute civil contempt under the Bankruptcy Code. Defendant should pay to the debtor attorneys' fees and other expenses which I fix at the sum of $3,500.00. My specific findings are as follows.

■ The defendant violated 11 U.S.C. § 362(a)(6) and 11 U.S.C. § 524(a)(2) respectively by knowingly requesting criminal prosecution before discharge and by causing the arrest of the debtor after discharge for the purpose of collecting two NSF checks, each in the amount of $700.00, covering a debt for past rent which was ultimately discharged in the pending bankruptcy. The defendant, shortly after the first meeting of creditors, by letter demanded payment, represented to Deschutes County authorities orally and in a written questionnaire that the two checks had not been paid, and sought the arrest of the debtor. In fact, the debtor had paid one check and had tendered sufficient funds, including a bad check penalty, to cover the other check, which payment should have been so applied. After discharge, in the same questionnaire given to authorities, defendant renewed his deception, pressed for an arrest warrant and did not inform authorities of the true facts until after the debtor had been arrested and after the debtor's·attorney found sufficient supporting records among defendant's own papers to prompt the prosecutor to inquire further. The deputy district attorney dismissed the case and later testified that he relied upon defendant's statements on the form, among other things, and would not have brought the case if he knew of the true facts.

I do not believe the defendant's testimony that his representations on the sheriff's form were innocently inadvertent and caused in one instance by an error in photocopying his records and in the other instance by the debtor's failure to specify proper application of the second payment. I find that the defendant knew the facts or at best acted with intentional blindness of the facts for the purpose of collecting a discharged debt. At the time of bankruptcy the debtor owed the defendant over $5,000.00 covering over three months delinquent and current rent for his place of business which was a transmission shop. Some months previously the debtor agreed to pay off the delinquency and to pay current rent at a combined rate of $700.00 per week, an agreement on which the debtor

quickly fell behind. The defendant did not evict the debtor but sought to collect the rent. The defendant continued to bill the debtor for the delinquent rent after bankruptcy although the defendant's own records show that the debtor notified the defendant's wife of bankruptcy on the day after signing the schedules. The defendant, besides representing to Deschutes County authorities that the checks were unpaid, also represented that he received the two checks for application to a "current" rather than a "past-due" account and at trial justified the representation by sophistically defining "current" as including the holding of two checks on a new but delinquent account.

The defendant, because of his deception, cannot excuse his conduct in this case or diminish willfulness by claiming reliance upon advice given by sheriff's personnel before he had the debtor arrested. Defendant knew of the statutory injunction under the Bankruptcy Code because he received notices of the injunction and attended the creditors' meeting. He had access to his own counsel and, nevertheless, by letter demanded payment of the debt and thereafter pressed county authorities to arrest the debtor. The written demand for payment, although not received, evidenced the defendant's intent to collect some of his back rent. The defendant chose to ignore the statutory injunctions in the Bankruptcy Code and chose to deceive county authorities. The fact that county authorities required him to send a demand before they would prosecute did not excuse his conduct. He should not be able to justify the harm he inflicted by saying he innocently chose to follow the wrong advice. He was not innocent.

■ There is a distinction between ordering victim restitution in spite of bankruptcy as a part of a criminal sentence as was permitted in *United States v. Carson,* 669 F.2d 216 (5th Cir.1982) [See also *Barnette v. Evans,* 673 F.2d 1250 (11th Cir.1982)] and, under the guise of victim restitution, using a demand and the arrest process in advance of conviction for the purpose of authorizing

extrajudicial collection by a private person of a discharged antecedent debt. The latter practice, if authorized by state law, would be prohibited under *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). This distinction is recognized *In re Magnifico,* 21 B.R. 800 (Bkrtcy.D.Ariz.1982) and the practice is condemned in the cases collected in *Lawson v. Boczonadi,* 22 B.R. 100, 103 (Bkrtcy.S.D.Ohio 1982).

The defendant attempted to use the criminal check statute to collect for credit already extended and did not act to obtain restitution of property which was truly obtained in reliance upon the check. This distinction shows the hypocrisy of any argument based upon the theory of criminal victim restitution. The defendant's post-bankruptcy demand for payment of a check given for an antecedent debt as a prelude to prosecution taints the whole process as debt collection. The defendant also cannot justify his conduct on the theory that Oregon's criminal compromise law, O.R.S. 135.705, and the prosecutor's policy of requiring the complaining witness to trigger the presumptions provided in O.R.S. 165.065(2)(b) authorize a private person to violate federal law by pretending to or actually seeking to collect a debt discharged in bankruptcy. Such arguments are neither logical after bankruptcy under Oregon law nor permissible in any event as a matter of law under *Perez.*

The present case is a civil contempt proceeding in which the penalty to be assessed is discretionary and is not governed by the rules of criminal contempt or by rules governing damage actions. See 2 *Collier on Bankruptcy,* § 105.03 (15th Ed. 1982) for the distinction between civil and criminal contempt. The debtor can be awarded attorneys' fees and out-of-pocket costs as a form of punishment in a civil contempt proceeding. *Matter of Gorin,* 18 B.R. 151 (Bkrtcy.D.Conn.1982). Such punishment is not intended to preempt an award of general damages or punitive damages in a private damage action arising out of misuse of process because of the narrow discretionary nature of the civil contempt proceeding.

The defendant should pay to the debtor the sum of $3,500.00 which shall include attorneys' fees and costs related to the criminal prosecution and that portion of the debtor's attorneys' fees attributable to the contempt proceeding. This order is made without prejudice to the debtor seeking a greater sum which may be awarded in a private civil damage action and the defendant's right of offset.

For the foregoing reasons which shall constitute Findings of Fact and Conclusions of Law herein, judgment should be entered finding the defendant in contempt and ordering the defendant to pay to the debtor the sum fixed herein.

These Findings are recommended for adoption by the District Court Judge and it is further recommended that judgment be accordingly entered by a District Court Judge based on the Findings pursuant to local rule.