**Kenneth Eugene HIX, Charlene Hix, Plaintiffs,**

v.

**AVCO FINANCIAL SERVICES OF OHIO, INC., Defendant.**

**In the Matter of Kenneth Eugene HIX, Charlene Hix, Debtors.**

**Bankruptcy No. 3–80–01600.**

United States Bankruptcy Court, S. D. Ohio, W. D.

Aug. 25, 1981.

Wilfred L. Potter, Springfield, Ohio, for defendants.

Carl E. Juergens, Springfield, Ohio, trustee.

James N. Griffin, Springfield, Ohio, for plaintiff.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### FINDINGS OF FACT

This case is before the court upon proceedings instituted by the Debtors against Avco Financial Services of Ohio, Inc. alleging violations of 11 U.S.C. § 524 because of attempts to collect a debt; the answer filed by respondent; and the evidence adduced.

Debtors, husband and wife, filed a voluntary petition on 3 June 1980 and a Discharge was duly entered on 20 January 1981. Avco was listed as a creditor, but did not file a proof of claim.

Prior to discharge on 17 December 1980 Avco filed an action in replevin in the Municipal Court of Springfield, Ohio, and the collateral (a boat and motor) was taken by the bailiff from Debtors' garage on or about 19 March 1981. The collateral remains unsold by Avco.

No proceedings were ever instituted by the Debtors for reaffirmation of the debt, or any part thereof, pursuant to 11 U.S.C. § 524(c).

There were innumerable conversations between Kenneth and the Branch Manager of Avco shortly after the order for relief, the number and extent of which being disputed by the parties. There is no question, however, that Kenneth wanted to keep his boat and that the Avco employee wanted "to settle the account" and "wanted to get our money and get rid of" the account. Kenneth finally concluded that he "was broke and had no way possible to re-sign." His attorney advised him not to re-sign and he so advised the Branch Manager. Rather than reaffirm Kenneth decided to "just let it go by", giving rise later to the state court replevin action, which was not opposed.

On or about October 10, 1980, Avco sent a mail solicitation for loans to debtors and on November 3, 1980, one of many telephone calls was made to Charlene by the Branch Manager.

The Debtors both considered the loan and boat as Kenneth's obligation, although the Branch Manager called Charlene "numerous times", threatening to pick up the boat, sometimes "late at night". Charlene advised she "wanted the phones to stop ringing—don't want anything further in the mail box ... to come to a complete stop." When Charlene received the calls, she implored her husband to take care of it because of the repeated distress.

Despite the passage of the long period of time (nine months), during the last week in March, 1981, Debtors received from Avco a statement listing a balance owing, including late charges, in the amount of $682.30 and also a "Notice Foreclosure Sale", to be held by public sale on April 21, 1981 at 9:00 A.M.

On or about May 28, the Debtors received another "Statement" seeking payment of the amount of $682.30 (practically a year after the order for relief).

## DISCUSSION OF ISSUES AND CONCLUSIONS OF LAW

Even though the acts of which Debtors complain actually started shortly after the order for relief was entered on 3 June 1980, and might well be addressed in terms of a violation of the automatic stay of 11 U.S.C. § 362, Debtors complain of no damages suffered prior to discharge. In fact, we note that acts to obtain possession of the collateral were in direct contravention of Debtors' rights, even though not opposed. Such transgressions also are not addressed because there is no question from the evidence that Kenneth Eugene Hix harbored some hope of reaffirmation to retain his boat and did, in fact, discuss this possibility with the Branch Manager on several occasions, until his attorney advised him to re-sign nothing.

As thus more narrowly delineated, the issues will be treated in trespass, rather than contempt of court as urged. See *Springfield Bank v. Caserta, 10 B.R. 57 (Bkrtcy.1981).*

Avco answers the complaint on the basis "that they did not attempt to collect from the Debtors after discharge by this Court." Further, it is alleged "that any contact with the Debtor after discharge was for the purpose of the return of the secured collateral subject to their lawful lien and that the Debtor specifically requested to be contacted about the date of sale of collateral and any contacts made by the Defendant were for the purpose of honoring the Debtor's request."

Assuming for the moment that Avco is sincere in this defense, the most disturbing aspects of the facts would be the indication that such tactics as here involved, to avoid the plain and acknowledged purpose of the reaffirmation provisions of the Bankruptcy Code, is a standard business practice by such a prestigious financial organization.

If a cloak of respectability is donned as a guise to obviate a continual harassment of debtors, even after discharge, one of the major reforms incorporated in the 1978 Code will soon be emasculated.

The facts *instanter* go far beyond any purpose of merely exercising a security interest, or liquidating the collateral. In fact, the collateral remains unsold to this day, raising some suspicion of marketability. Perhaps, Kenneth Eugene Hix, by expressing some early interest in keeping his boat, encouraged the subsequent harassment. Whatever may be his blame, he certainly did not invite collection tactics after the boat had been seized, and continuing for three months thereafter and after the discharge in bankruptcy without reaffirmation, on his attorney's advice.

The most grievous effects and damages, in any event, were suffered by Charlene Hix, for she disclaimed any interest in the collateral. Her discomfort and distress is apparent; and, further, both she and her husband were of such discomfiture to return to their attorney for relief, notwithstanding any cloak of respectability.

Even if Avco feels complete innocence of any improper motivation, damages have been inflicted both upon Debtors and upon the spirit and intent of the legal safeguards enacted by the Congress "to give complete effect to the discharge and to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts. This ... has been expanded over a comparable provision in Bankruptcy Act Section 14f to cover ... harassment, threats of repossession and the like." *11 U.S.C. § 524 and House Report No. 95–595, 95th Cong., 1st Sess. (1977) 365–6; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 80, U.S.Code Cong. & Admin.News 1978, 5787.*

We particularly note that § 524(a)(2) specifically operates not only to enjoin attempts to collect a discharged debt as a personal liability, but further enjoins any act to recover as a personal liability *"from property of the debtor"*.

Accordingly, it is *ORDERED, ADJUDGED AND DECREED* that Debtors, Kenneth Eugene Hix and Charlene Hix be awarded actual and punitive damages in trespass in the amount of $750.00, allocated, as follows:

To Kenneth Eugene Hix .. $150.00
To Charlene Hix .. 350.00
To both, for expenses of
      litigation .. 250.00