Mizella GREEN, aka "Mike" Green, Plaintiff,

v.

The NATIONAL CASH REGISTER COMPANY CI CORPORATION SYSTEM, Gary Smith, The NCR Employees Credit Union, Inc., Defendants.

In the Matter of Mizella GREEN, aka "Mike" Green, Debtor.

Bankruptcy No. 3–80–04020.
Adv. No. 3–81–0363.

United States Bankruptcy Court, S. D. Ohio, W. D.

Oct. 16, 1981.

Alverene N. Owens, Dayton, Ohio, for plaintiff.

Thomas W. Sims, Dayton, Ohio, for defendants, NCR Employees Credit Union and Gary Smith.

John Ducker, Dayton, Ohio, Trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

Debtor, Mizella Green, instituted an action against The National Cash Register Company (later dismissed), The N.C.R. Employees Credit Union and Gary Smith, Credit Union officer, for a citation in contempt of court. The issues were joined upon Answers filed by Defendants; a pretrial order entered 20 August 1981; and the evidence adduced at the trial on 29 September 1981. The attorneys submitted the matter without Briefs or citations of legal precedents.

### FINDINGS OF FACT

The Debtor filed a voluntary petition in bankruptcy on 18 December 1980, scheduling Defendant Credit Union as a secured creditor on a 1979 Oldsmobile automobile. The trustee filed a no-asset report and abandonment of all property on 3 February 1981.

Debtor at the time of filing had two outstanding accounts, the secured loan with an outstanding balance in the amount of $3,859.41 and an unsecured "line of credit" loan with an outstanding balance in the amount of $496.02. There was an authorized weekly payroll deduction in effect for both loans through the employer. The Debtor authorized continued payroll deductions on 29 December 1980 in contemplation of a reaffirmation agreement to keep her automobile.

At the time of the discharge hearing held on 17 March 1981, a continuance was requested because the reaffirmation agreement had not been finalized.

The reaffirmation had not been consummated because the Credit Union would not agree to a reaffirmation on the secured loan without also including the unsecured loan balance, which was a Credit Union admitted policy. The attorney for Debtor advised her client that it would be a "fraud upon the court" to submit for court approval the application to reaffirm as prepared by Gary Smith of the Credit Union because the total amount of both loans had been totalled as the balance on the secured loan and the value of the collateral in such a manner as to deceive the court.

On 13 April 1981, early in the morning, the automobile was seized by the Credit Union at Debtor's residence. Debtor first thought the automobile had been stolen and

called the police department and awoke her neighbors. She testified that she was "furious" because she needed the vehicle to take her children to school and to get to work.

Upon being advised by the Police that the Credit Union had taken possession, she in desperation telephoned her attorney, who advised she "would handle."

Debtor later called the Credit Union and asked what arrangements could be made to regain her vehicle because of her dire need, and that she could not be concerned about "all of the legal technicalities" raised by her attorney. She then proceeded to deal personally with Gary Smith of the Credit Union, who had prepared a reaffirmation agreement for the secured loan only, for Debtor to submit to her attorney.

Debtor was required, however, to pay the unsecured loan in full in cash. She borrowed $340.00 from her mother, plus an additional sum to pay "poundage," in the approximate sum of $104.00. Debtor's attorney persisted in not approving such an arrangement; so, Debtor proceeded without approval of counsel in order to regain possession of the much desired vehicle (possibly improvidently).

## DECISION

Debtor seeks a finding of contempt of court because of the Credit Union's alleged "violation of the judgment and injunctions;" damages in the amount of $4,500.00; and attorney's fees and costs. At the pre-trial conference, the issues were refined by the attorneys and stated, as follows:

"(a) Whether a creditor may possess collateral of a debtor during the pending of a bankruptcy and before the filing of a final order of discharge?

(b) Whether a creditor can refuse reaffirmation and threaten repossession of collateral because of a debtors refusal to sign reaffirmation of both the secured and unsecured loans when debtor remains ready, willing and able to sign the secured loan?

(c) What is the legal effect of a creditor's requesting an attorney to include in the amount for reaffirmation the secured and the unsecured loans without stating such in order to facilitate the approval of the reaffirmation agreement for the unsecured loan?

(d) Whether legal theories of malice are applicable under the aforementioned section of the Bankruptcy Code—i. e., 11 U.S.C. Section 362(d) [sic]— such that punitive damages are applicable?"

At the conclusion of the trial, it was announced from the Bench that the pleadings and evidence would be considered as a personal cause of action by Debtor in trespass; but, that the alleged claim for a citation in contempt would be dismissed because the Debtor had encouraged and condoned continued payroll deductions and payments on the accounts. See decision by this Court in *Springfield Bank v. Caserta* (Bkrtcy.S.D.Ohio 1981) 10 B.R. 57.

 Concluding that Debtor so participated in loan repayments does not cure the gross abuse of the Debtor's rights, nor does it rectify entirely the illegal conduct of the Credit Union. Having concluded that punitive sanctions for contempt of court will not be assessed, the following additional findings and conclusions are reached, namely:

(1) The abandonment by the Trustee in Bankruptcy did not alter the rights to possession of the vehicle as between the Credit Union and the Debtor, so long as the case is still pending. See decision by this Court in *Estes v. Eaton National Bank (1981) Case No. 3–80–03222, Adv. No. 3–80–0721.* The trustee's abandonment effects only a lift of the stay as to the bankruptcy estate. 11 U.S.C. § 362(c)(1). As to other actions, the stay continues until the time a discharge is granted or denied, 11 U.S.C. § 362(c)(2).

(2) A creditor is under no statutory duty to enter into an involuntary reaffirmation agreement and may decline for any reason whatever or for no reason, if the refusal in no way violates rights conferred upon a debtor,

such as rights of redemption of personal property under Section 722 or freedom from governmental reprisals for seeking relief, under Section 525.

In this regard, we note that both the Section 362 stay and the Section 524(a)(2) injunction against "any act" pursued to collect a debt from the debtor or the debtor's property would prohibit any acts for collection of the unsecured debt herein, which is dischargeable. Refusing to execute a reaffirmation agreement unless the dischargeable unsecured debt be paid is such an act which violates the statutory rights of the debtor. Deliberately keeping such facts from the knowledge of the court is even more reprehensible. Collecting the unsecured debt by the subterfuge of a cash repayment before executing a reaffirmation agreement constitutes a violation of Debtor's rights by unmitigated duress to induce Debtor to waive the discharge, contrary to Section 727(a)(10).

As mentioned in the decision by this Court in *Jones v. Springfield City Schools Credit Union (Bkrtcy.S.D.Ohio 1980), 6 B.R. 336, 6 B.C.D. 1115,* "This Court is constrained to concur in the thought that it would be an excess of 'paternalism' to purport to dictate how the debtor spends her money upon termination of the bankruptcy proceedings." Nevertheless, any act by a creditor to collect a discharged debt is an invitation to litigation and judicial scrutiny under the mandate of the Congress if a debtor elects to pursue rights obtained in the bankruptcy process. In *Hix v. Avco Financial Services of Ohio, Inc., (Bkrtcy.S. D.Ohio 1981), 13 B.R. 752,* this Court expressed the opinion that contacts with a debtor to collect money is a dangerous practice if the original debt is dischargeable. In the *Hix* case, the creditor did not desire to enter into any reaffirmation agreement, but offered to sell for cash a repossessed boat back to the debtor, at a price in excess of its value. As there mentioned, "assuming for the moment that Avco is sincere in this defense, the disturbing aspects of the facts would be the indication that such tactics as here involved, to avoid the plain and acknowledged purpose of the reaffirmation provisions of the Bankruptcy Code, is a standard business practice by such a prestigious financial organization.... If a cloak of respectability is donned as a guise to obviate a continual harassment of debtors, even after discharge, one of the major reforms incorporated in the 1978 Code will soon be emasculated."

■ In summary, this Court is of the opinion that both the attempted adhesion clause to include a discharged unsecured debt in a reaffirmation agreement for a secured debt in excess of the value of collateral and, also, the subsequent negotiation of a side payment of a discharge unsecured debt as a condition precedent to executing a reaffirmation agreement by the creditor for the secured debt are violations of debtor's rights under either 11 U.S.C. § 362 or 11 U.S.C. § 524(a)(2) and, further, such a reaffirmation is void as a matter of public policy.

There is insufficient evidence, however, of outrageous conduct, indignity, or insult to justify exemplary damages. See *Am. Jur.2d, Damages, §§ 249 et seq.*

ORDERED, ADJUDGED AND DECREED, that Defendant NCR Employees Credit Union, Inc., and Gary Smith, its agent, refund to Plaintiff Mizella Green the amount of $340.00 collected on a dischargeable debt as a prerequisite to executing a reaffirmation agreement on a secured debt. It is further

ORDERED, ADJUDGED AND DECREED, that Defendants reimburse Plaintiff for attorney's fees and expenses of litigation in the amount of $350.00. It is further

ORDERED, ADJUDGED AND DECREED, that Plaintiff's Complaint for punitive or exemplary damages in the amount of $4,500.00 should be, and is hereby, denied.