**In re Gerard D. GRAU, Debtor.**

**Bankruptcy No. 92–24266.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 19, 1994.

Asst. U.S. Trustee by Robert A. Angueira, Office of U.S. Trustee, Miami, FL.

Chad P. Pugatch, Chad P. Pugatch, P.A., Fort Lauderdale, FL, for Gerard D. Grau, M.D.

Frances D. Sheehy, Gutter, Josepher, Ruffin & Sheehy, Fort Lauderdale, FL, for Stanley B. Branham (bankruptcy court proceedings).

Donald A. Tobkin, Creditor, Pajcic & Pajcic, P.A., Jacksonville, FL.

Sheldon J. Schlesinger, Sheldon J. Schlesinger, P.A., Fort Lauderdale, FL, for Stanley B. Branham (state court proceedings).

## ORDER ON CREDITOR'S MOTION FOR REHEARING AND RECONSIDERATION OF ORDER DETERMINING CREDITOR IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY

A. JAY CRISTOL, Chief Judge.

**THIS CAUSE** came before the Court on May 31, 1994 upon the motion of Creditor Stanley B. Branham ("Branham") for rehear-ing or reconsideration of the Court's Order of April 5, 1994 determining Branham in contempt for violation of the automatic stay. The Court's April 5, 1994 Order was based upon the November 4, 1993 hearing on Debtor's motion to enforce automatic stay and for contempt and sanctions for violation of the automatic stay.

As grounds for his Motion for Rehearing or Reconsideration, Branham states that the April 5, 1994 Order entered by the Court failed to provide for an evidentiary hearing promised by the Court in November. Specifically, Movant argues that after argument of counsel on November 4, 1993 and after the sworn testimony of Mr. Mel Waxman of the DPR, "the Court directed the parties to prepare proposed orders with respect *only to the initial determination as to whether the Section 362(b)(4) exception applie[d]*" to Mr. Branham. Branham argues that the Court indicated that if a determination was made by the Court that the governmental entity exception under § 362(b)(4) did not apply to Mr. Branham, then "a further evidentiary hearing would be held to determine willfulness [of Branham's actions] and damages." (CP # 125, p. 1–2).

Movant's Motion for Rehearing and Reconsideration does not dispute the Court's decision that Branham's post-petition actions are not excepted from the automatic stay under § 362(b)(4) as the "continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." Branham clearly is not a "governmental unit" as defined by the Code.[1] What Branham does dispute is the *willfulness* of his acts,[2] and his lack of opportunity give testimony as to the willfulness of his conduct.

On May 31, 1994 at 3:10 p.m. an evidentiary hearing was held wherein the Court reheard the argument of counsel and listened to the sworn testimony of Mr. Branham. Therefore, having heard the argument of counsel on November 4, 1993 and on May 31, 1994, having heard the sworn testimony of

---

1. This issue was discussed at length in this Court's order of April 5, 1994.

2. Acts which are in violation of the stay and subject to the damages provisions of § 362(h) must be both post-petition and willful violations.

both Mel Waxman of the DPR on November 4, 1993 and creditor Stanley Branham on May 31, 1994, and having reviewed the file in its entirety and being otherwise fully advised in the premises, the Court determines as follows.

## FACTS

Although the facts were set out in the Court's April 5, 1994 order, the Court believes it is worthwhile to set forth the facts as they now stand since additional testimony was taken and further argument heard after entry of the April 5, 1994 order. The facts are not in material dispute.

1. Debtor was a party to an action in the Circuit Court of the Seventeenth Judicial Circuit, In and For Broward County, Florida, styled *Stanley B. Branham, Plaintiff, vs. Gerard D. Grau, M.D. and Gerard D. Grau, M.D., P.A., et al., Defendants,* Case No. 90–11105.

2. On or about May 15, 1992, the Circuit Court entered a judgment in the amount of $350,000 against Debtor, the execution of which was stayed upon the Debtor's filing an appeal on the judgment.

3. On or about June 16, 1992, prior to Debtor's September 28, 1992 bankruptcy petition, Branham, initiated an inquiry with the DPR, which requested "discipline" of Gerard D. Grau for possible violation of the Florida Medical Practice Act, F.S. Chapter 458, relating to financial responsibility requirements of a physician as a prerequisite to the issuance or, in this case, renewal of a medical license in Florida.

4. On or about July 17, 1992, a formal Uniform Complaint Form was filed with the DPR. The complaint requested an investigation by the DPR of Gerard D. Grau for possible violation of Florida Statutes 458.-320(5)(g) and 458.331(1)(a) and (g) [3].

5. Fla.Stat. 458.320 subsections (1), (2) and (3) provide in essence that as a condition of licensing and prior to the renewal of an active license, a physician must maintain either 1) medical malpractice liability insurance, 2) an escrow account consisting of cash or assets eligible for deposit, or 3) an irrevocable letter of credit in order to satisfy any claims that may arise against the physician.

6. Fla.Stat. 458.320(5)(g) essentially provides that the financial responsibility requirements referenced above shall not apply to a physician who already holds a license *if* that physician agrees, upon the entry of an adverse final judgment arising from a medical malpractice claim, to pay the judgment creditor within 60 days after the judgment becomes final and subject to execution. Dr. Grau, the Debtor, chose this route on November 1, 1991 when he signed a notarized statement with the renewal of his license to practice medicine.

7. On or about September 4, 1992, Mel Waxman, an investigator with the DPR issued an Investigative Report regarding alleged violations by Gerard D. Grau of F.S. § 458.320(5)(g) and § 458.331(1)(a) and (g) for failure to pay Branham's adverse final judgment arising from the Circuit Court medical malpractice action.

8. On or about September 24, 1992, the Circuit Court modified its stay of execution to allow execution of the judgment.[4]

9. On September 28, 1992, Debtor filed his Voluntary Petition under Chapter 11 of the Bankruptcy Code. Branham does not dispute receipt of notice of Debtor's bankruptcy filing.

10. At unspecified dates in December 1992 and January 1993, after the filing of the Debtor's petition for bankruptcy, Branham communicated with the DPR both in writing (via fax) and by telephone regarding the status of his pre-petition Complaint.

---

**3.** Fla.Stat. Section 458.331(1)(g) provides:

(1) The following acts shall constitute grounds for which the disciplinary actions specified in subsection (2) may be taken:

(a) Attempting to obtain, obtaining, or renewing a license to practice medicine by bribery, by fraudulent misrepresentations, or through an error of the department of the board.

. . . .

(g) Failing to perform any statutory or legal obligation placed upon a licensed physician.

**4.** Pursuant to Fla.Stat. § 458.320(5)(g), Debtor would now be responsible for paying Branham's final judgment within 60 days of this date.

11. In one of the communications, on or about January 19, 1993, Waxman received from Branham (via fax) a copy of a December 17, 1993 letter from Debtor's counsel which indicated that Branham's state court judgment was no longer stayed from execution and the DPR should continue with their proceeding against the Debtor as he (Branham) had not been paid on his Circuit Court judgment in violation of Florida Statute. [November 4, 1994 hearing, Tr. pp. 40, 44].

12. Branham testified that he may have initiated the telephone conversations with Waxman, but the calls were initiated solely in connection with other official matters. Branham testified that it was Waxman who always brought up the matter of his complaint and it was Waxman who asked him to fax papers to the DPR regarding his case. [May 31, 1994 hearing].

13. Mel Waxman of the DPR testified that it was Branham that contacted him by telephone. Waxman further testified that Branham faxed to the DPR papers regarding his complaint without having requested that Branham do so. [November 4, 1993 hearing, Tr. p. 47].

14. On July 15, 1994 Branham filed an objection to the confirmation of Debtor's Plan. As grounds for his objection, Branham cited his complaint filed with the DPR and the ongoing investigation into the possible revocation of Debtor's medical license.

### ISSUE

Branham argues that there is no evidence to support the conclusion that his post-petition acts constitute a willful violation of the automatic stay. He argues that any post-petition communications he had with the DPR were a result of merely "cooperating with or responding to inquiries" of the DPR, and that any post-petition communications with the DPR were made in his official capacity as an officer of the Plantation Police Department.

Debtor argues that Branham's actions were not merely "responses" to DPR inquiries but rather, as a *creditor* in the instant bankruptcy proceeding, his actions were designed to place Debtor in a position of either

paying a pre-petition claim (the $350,000.00 Circuit Court judgment) or losing his medical license for failure to pay Branham's judgment.

The issue before the Court, then, is whether Branham's post-petition actions were (a) intended to place the Debtor in a position of either paying a $350,000 judgment or losing his medical license or, (b) whether Branham merely wanted to report to the DPR that the Debtor was a bad doctor who did not pay his judgments and any further conversations he had with the DPR were solely in his official capacity as a police officer responding to DPR inquiries.

■ "Willfulness," for purposes of being subject to damages provisions of § 362(h) for violating the automatic stay, does not mean that one intends to violate specific provisions of the Bankruptcy Code, but that there is "deliberateness of conduct" coupled with knowledge of the bankruptcy filing. *In re Colon,* 102 B.R. 421 (Bankr.E.D.Pa.1989); *In re Wagner,* 74 B.R. 898, 903 (Bankr.E.D.Pa. 1987).

### APPLICABLE LAW

Title 11 U.S.C. Section 362(a) provides, in pertinent part, as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay, applicable to all entities, of—

. . . .

(4) any act to create, perfect, or enforce any lien against property of the estate.

. . . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of a case under this title.

Congressional intent regarding § 362(a) is clear.

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. *It stops all collection efforts, all harassment,*

**690**

and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy ... Paragraph (6) prevents creditors from attempting *in any way to collect* a pre-petition debt. (emphasis added)

H.R.Rep. No. 95–595, 95th Cong. 1st Sess., U.S.Code Cong. & Admin.News 1978, pp. 5787, 6296–6298; *In re Pioneer Valley Indoor Tennis Center,* 20 B.R. 884, 886 (Bkrtcy.D.Mass.1982).

For years courts have recognized that the language of subsection (a)(6) is "very broad," and is designed to prevent any kind of creditor collection, coercion and harassment. *Morgan Guaranty Trust Co. v. American Sav. & Loan Assoc.,* 804 F.2d 1487, 1491 (9th Cir.1986), *Matter of Holland,* 21 B.R. 681 (Bkrtcy.N.D.Ind.1982). Broad interpretation of § 362(a)(6) has prohibited conduct ranging from that of an informal nature, such as by telephone contact or by dunning letters to more formal judicial and administrative proceedings that are also stayed under paragraph (1). *In re Sechuan City, Inc.,* 96 B.R. 37 (Bkrtcy.E.D.Pa.1989); *In re Hix,* 13 B.R. 752 (Bkrtcy.S.D.Ohio 1981); *2 Collier on Bankruptcy,* 362.05 at 362–41 (15th ed. 1988).

In *In re Sechuan City, Inc., supra,* the Debtor initiated an adversary proceeding against its lessor alleging violation of the automatic stay. The lessor had posted various signs through the hotel lobby stating that the Debtor, a restaurant lessee, had filed bankruptcy, was not paying its bills, and that alcoholic beverages were no longer permitted to be consumed on the premises. The Court concluded that while the lessor did not bring suit against the debtor, its actions were designed to place the debtor in a position of either paying the lessor's pre-petition claim or losing business due to lessor's actions. Such a choice, stated the *Sechuan* Court, runs counter to the purpose of § 362(a).

Clearly not every action taken by creditors toward the debtor results in a violation of the bankruptcy stay. In *Brown v. Pennsylvania State Employees Credit Union,* 851 F.2d 81, 84 (3d Cir.1988), the Third

Circuit Court of Appeals upheld the bankruptcy court conclusion that a letter sent to a debtor, stating that no future loans would be made unless a pre-petition debt was reaffirmed, did not violate the automatic stay. The bankruptcy court had determined that the letter was only a communication of credit union policy sent without any purpose to collect a pre-petition debt. Such communication of policy was deemed informative and not coercive.

Similarly, the Court does not believe that Branham's actions were efforts to coerce payment of his pre-petition claim. The DPR does not collect judgments. It appears to the Court that Branham, having concluded that Dr. Grau was not going to pay the $350,000 judgment, decided that he would at least make the Debtor stand responsible for his failing to pay his debts as he was required to do as a medical doctor under the Florida Medical Practice Act (the "Act"). And so, pre-petition, he reported Debtor to the DPR for failure to pay his judgment; there were follow-up conversations with the DPR regarding the investigation into Debtor's failure to comply with the financial requirements of the Act; and Branham objected to Debtor's plan based on the complaint filed with the DPR against Debtor.

All of this, however, does not amount to an act or effort to collect a debt. Accordingly, it is

**ORDERED** that:

1. The Motion for Rehearing and/or Reconsideration and/or Amendment of the April 5, 1994 Order is GRANTED;

2. The April 5, 1994 Order is amended as herein provided;

3. Debtor's Motion to Enforce the Automatic Stay and for Contempt and Sanctions against Branham is DENIED.

**DONE and ORDERED.**