**In re Jason/Angela JACOBS, Debtors.**

**Jason/Angela Jacobs, Plaintiffs,**

**v.**

**Honda Federal Credit Union, Defendant.**

**No. 03–3517.**

United States Bankruptcy Court, N.D. Ohio.

Dec. 2, 2004.

David M. Whittaker, Columbus, OH, for defendant.

Randy Lee Reeves, Lima, OH, for plaintiffs.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on the Plaintiffs/Debtors' Complaint for Violation of the Bankruptcy Code's Automatic Stay as set forth in 11 U.S.C. § 362. Prior to the time of the Trial scheduled on this matter, it was submitted to the Court that no factual issues were in dispute, and thus the matter could be decided based solely upon the Briefs submitted by the Parties. The Court is now in receipt of these Briefs, and based upon review of the arguments presented by the Parties, the Court finds that the Debtors' Complaint should be Dismissed. Beginning with the rele-vant circumstances giving rise to this matter, the reasons for this decision are as follows:

On September 3, 2003, the Plaintiffs/Debtors' filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In their schedules, the Debtors listed the Defendant as holding both a secured and unsecured claim. The secured claim exists against a 1995 automobile owned by the Debtors against which the Defendant maintains a purchase money security interest; the unsecured claim stems from a deficiency balance as the result of the Debtors' surrender of an automobile to the Defendant against which it had also maintained a purchase money security interest.

Prior to receiving a discharge, the Debtors provided notice to the Defendant of their intention to reaffirm on the debt relating to the Defendant's security interest in their 1995 automobile. In conformance with company policy, however, the Defendant conditioned acceptance of any reaffirmation on the inclusion in the agreement of its unsecured claim, here the deficiency balance. Based upon this condition for reaffirmation, the Debtors then commenced the instance proceeding for violation of the automatic stay of § 362(a).

### DISCUSSION

As put forth in their memoranda to the Court, the above facts, as stipulated to by the Parties, present one legal issue for determination: whether the automatic stay of § 362 is violated when a creditor attempts to condition the reaffirmation of its claim upon the reaffirmation of a separate claim. Under 28 U.S.C. § 157(b)(2), determinations concerning stay violations are core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders. *Davis v. Conrad Family Ltd. Partnership (In re*

*Davis)*, 247 B.R. 690, 694 (Bankr.N.D.Ohio 1999).

The issue presented by the Parties to the Court requires an examination as to the interplay between two Bankruptcy Code sections: (1) § 524(c), which governs reaffirmation agreement; and (2) § 362(a), entitled the "automatic stay," which sets forth those actions which are enjoined at the commencement of a bankruptcy case.

■■■■ At its most basic form, the reaffirmation of a debt is a voluntary agreement to hold an otherwise dischargeable obligation, nondischargeable. *See Schott v. WYHY Federal Credit Union (In re Schott)*, 282 B.R. 1, 6 (10th Cir. BAP 2002) (a reaffirmation agreement is the only means by which a dischargeable debt may survive a Chapter 7 discharge). The reaffirmation process is most commonly utilized, although not actually limited to the situation where a debtor seeks to keep encumbered property. The reaffirmation of a debt, however, is a two-way street; section 524(c), by its frequent utilization of the term, makes it abundantly clear that a debt may only be reaffirmed by "agreement." This, in one form or another, has been universally held to mean the mutual assent of both the creditor and the debtor. *See, e.g., Matter of Turner*, 156 F.3d 713, 718 (7th Cir.1998). Thus, although frequently approached by debtors to the contrary, there exists no right to reaffirm a debt unilaterally and a creditor may decline for any reason or no reason whatsoever to enter into a reaffirmation agreement.

Of course, for mutual assent to exist— thereby creating an "agreement" for purposes of § 524(c)—it is inevitable that some contact between the parties (or their agents) will take place. But, in the instance where such contact is initiated by the creditor, a potential conflict arises with respect to § 362(a), the automatic stay.

■■■■ While in effect, the automatic stay of § 362(a) enjoins all debt collection efforts against a debtor. The scope of this injunction is broad and includes even informal contact initiated by a creditor such as phone calls or dunning letters. *See, e.g., In re Grau*, 172 B.R. 686, 690 (Bankr. S.D.Fla.1994). Although certain acts are excluded from the scope of the automatic stay, *see* § 362(b), no explicit exception is made for communications related to the reaffirmation of a debt.

■■■■ In the reaffirmation context, however, the Sixth Circuit Court of Appeals has held that reading § 362 so as to preclude all contact between creditors and debtors would undermine the reaffirmation process of § 524(c). *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir.2000). And therefore, when a creditor seeks a debtor's reaffirmation, something more than mere correspondences between the parties, such as the act of sending a letter, must be alleged to state a claim for a stay violation. *Id.* Stripped then of any excess verbiage, contact between a debtor and creditor will not run afoul with § 362(a) so long as the contact is limited to the reaffirmation process of § 524(c).

■■■■ This rule, however, is not absolute; and where a creditor's acts are coercive or otherwise harassing in nature, a stay violation will still exist notwithstanding that the scope of the underlying contact was based solely upon the potential reaffirmation of a debt under § 524(c). In the language used by the Sixth Circuit Court of Appeals: for reaffirmation purposes, "a course of conduct violates [the stay] if it (1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) is contrary to what a reasonable person would consider to be fair under the circumstances." *Id.* Thus to now put things

in a more refined light, the legal issue before the Court is this: Whether the Defendant, by refusing to accept the Debtors' tender of reaffirmation on its secured obligation unless they also reaffirmed on its unsecured debt, engaged in conduct that may be construed as coercive, and thus violative of the stay of § 362(a).

The practice of a creditor conditioning reaffirmation of one claim to another has been referred to as "linkage." On this practice, the Debtors have asked this Court to adopt the holding in *Green v. Nat'l Cash Register Co. CI Corp. Sys. (In re Green)*, 15 B.R. 75, 78 (Bankr.S.D.Ohio 1981), which found that linkage violated a debtor's rights and thus was void as a matter of public policy. (Doc. No. 16, at pg. 2). In essence then, the Debtors implore this Court to apply something akin to a per se rule that any attempt to condition the reaffirmation of one debt upon another is coercive in nature, and thereby violative of the automatic stay of § 362(a). In taking this position, the Debtors put forth the following policy concerns: linkage would hinder the fresh-start policy of the Bankruptcy Code; and (2) given the often superior bargaining power of creditors, linkage makes the existence of any true "agreement" for purposes of § 524(c) simply illusory as such an "agreement" will not be voluntary. (Doc. No. 18, at pg. 2).

Policy-wise, however, there are major weaknesses with the Debtor's position, a few of which were previously pointed out by this Court in a similar matter:

> the fresh-start provided for by the Bankruptcy Code is not always without a price; of particular applicability, when a debtor voluntarily submits to the jurisdiction of this Court, the debtor relinquishes their rights in their nonexempt property to the extent that a trustee may utilize that property for the benefit of the debtor's unsecured creditors. In

this regard, a few observations can be made. First, had the Debtors desired to keep their nonexempt property, bankruptcy relief should have been sought under Chapter 13 rather than Chapter 7, as the latter Chapter is appropriately entitled "Liquidation." Second, while most debtors expect to be able to reaffirm on a debt against fully encumbered property, the Bankruptcy Code makes no such guarantee. Finally, in a Chapter 7 bankruptcy, the heart of the fresh-start policy of the Bankruptcy Code is the bankruptcy discharge—which the Debtors have already received—and not the retention of one's encumbered property.

*Vaughan, Trustee v. Conseco (In re Swank)*, Case No. 02–3029, at pg. 8, entered May 13, 2003. With these points in mind, and while the Court can sympathize with the Debtors' dilemma,—i.e., the desire to keep encumbered property at the lowest possible cost—considering that a creditor's assent is required in the reaffirmation process, it becomes a very long leap to make the connection that linkage is a per se violation of the automatic stay. Additional concerns further play this out.

First, it is slightly disingenuous to argue that linking debts in a reaffirmation agreement hinders the fresh-start policy of the Bankruptcy Code when the very nature of a reaffirmation agreement, by converting an otherwise dischargeable debt to a nondischargeable debt, hinders a debtor's fresh start. Second, on the Debtor's latter policy concern—concerning the involuntary nature of a reaffirmation agreement which require linkage—it cannot be stressed enough that at no time is a debtor under any compulsion to reaffirm on a debt, and in many instances, the debtor will, by not having the additional debt burden, be better off in the long run if the obligation is not reaffirmed. A logical con-

nection therefore can be drawn that, while it is very often the case that creditors have superior bargaining power, this fact alone does not establish that the reaffirmation agreement was entered into involuntarily.

It must also be remembered that reaffirmation agreements are, for all practicable purposes, new contracts; creditors, or debtor's for that matter, are free to propose any new terms to the agreement. Thus, to adopt the Debtors' position potentially leads this Court down the slippery slope whereby any terms in a reaffirmation agreement which deviate from the parties' original agreement, and which do not otherwise inure to the benefit of the debtor, would have to be viewed as coercive in nature.

In addition to the foregoing concerns, this Court also finds it persuasive that, except for a couple of minor exceptions, courts, when faced with the issue of linkage, have declined to adopt the approach advocated by the Debtors.[1] Especially noteworthy here is the case of *Jamo v. Katahdin Federal Credit Union (In re Jamo)*, 283 F.3d 392 (1st Cir.2002), the only circuit court yet to address the issue of linkage.

In *In re Jamo*, the court, like in the instant matter, was asked to adopt a per se rule against linkage, but declined to do so, instead opting for a more "fact-specific" approach whereby linkage is but one factor to consider in determining whether a creditor acted in a coercive manner. In adopting this approach, the court made the following relevant observations, which both expand upon and add to those already mentioned by this Court:

When an individual debtor voluntarily files for bankruptcy, he usually has the option of proceeding under either Chapter 7 or Chapter 13. Unlike Chapter 7, Chapter 13 contains a 'cram down' provision, which permits a debtor to retain the collateral underlying a secured obligation without the creditor's approval. Even if a debtor belatedly decides that 'cramming down' is in his best interest, a decision to file under Chapter 7 ordinarily is not irrevocable. The Bankruptcy Code, with only a few exceptions allows a debtor who initially has filed for Chapter 7 relief to jump midstream to Chapter 13.

Conversely, a debtor who persists in traveling the Chapter 7 route knows that reaffirmation depends entirely on his ability to come to terms with the secured creditor. He also knows (or, at least, has every reason to expect) that the creditor may drive a hard bargain. Hence, a debtor must bear some degree of responsibility for choosing to proceed under Chapter 7.

Perhaps more important, the Bankruptcy Code does not outlaw linkage as an element of reaffirmation negotiations. The absence of such a prohibition makes sense, for a secured creditor's insistence on linkage does not force a debtor to reaffirm unsecured obligations. As we have explained, reaffirmation agreements are consensual, and a debtor always has the option of walking away from an unattractive proposal.

Of course, a debtor whose home is at stake is in an unenviable position. But a Chapter 7 discharge is not a walk in the park; it is a benefit that comes with certain costs. Consequently, a Chapter

---

1. Courts approving linkage include, *In re Briggs*, 143 B.R. 438 (Bankr.E.D.Mich.1992); *Schmidt v. American Fletcher National Bank & Trust Co. (In re Schmidt)*, 64 B.R. 226 (Bankr.S.D.Ind.1986); *In re Brady*, 171 B.R. 635, 640 (Bankr.N.D.Ind.1994). Cases contra: *Green v. Nat'l Cash Register Co. CI Corp. Sys. (In re Green)*, 15 B.R. 75, 78 (Bankr. S.D.Ohio 1981); *In re Greer*, 189 B.R. 219 (Bankr.S.D.Fla.1995), but only in dicta.

7 debtor is not inoculated against the necessity for making hard choices. If the debtor surrenders his home, he is entitled to erase all his debts (secured and unsecured) and start afresh. If, however, his paramount interest is in keeping his home and he cannot redeem the collateral, he must come to terms with the mortgagee. Bankruptcy, as life itself, is a series of tradeoffs.

*Id.* at 400 (internal citations and quotations omitted). The Court in *In re Jamo* also noted that to adopt a per se approach against linkage might make creditors more recalcitrant of reaffirmation agreements, thus decreasing the viability of this option, a result which is inapposite to the Debtors' policy arguments. *Id.* at 401.

Also addressed in the *In re Jamo* decision is what is implicit in many linkage situations: the threat, real or implied, of foreclosure against the encumbered property. Again here, however, the Court in *In re Jamo* declined to find that, alone, the threat of foreclosure would lead to the conclusion that any subsequent reaffirmation was not entered into voluntarily. *Id.* at 402. This position makes sense.

A debtor having consumer debts is required to make a statement of intention with respect to encumbered property. 11 U.S.C. § 521(2)(A). The options available are surrender or, if the debtor wishes to retain the property, redemption or reaffirmation. Important here, the Sixth Circuit has held that the latter two options are the exclusive options available for a creditor wishing to retain encumbered property. *GMAC v. Bell (In re Bell)*, 700 F.2d 1053 (6th Cir.1983). Thus, it follows that, in the absence of a reaffirmation agreement or the redemption of the property, a debtor is expected to voluntarily return the encumbered property. At the very least then, the threat of foreclosure merely states the obvious: the encumbered property must be returned to the creditor. As such, the threat foreclosure, standing alone, can hardly be seen as coercive.

Putting things together then, the Court cannot find that, as a matter of law, a creditor conditioning reaffirmation of one claim to another violates the automatic stay of § 362(a). Similarly, even though foreclosure by the Defendant against the Debtors's encumbered property (their automobile) was a very real possibility, this fact, without more, does lend itself to a § 362(a) stay violation. Therefore, as no other evidence exists in this case that the Defendant acted in a coercive or otherwise harassing nature against the Debtors, the Defendant's act of conditioning the reaffirmation of its secured claim on the reaffirmation of its unrelated unsecured claim does not result in a stay violation.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Complaint of the Plaintiffs, Jason and Angela Jacobs, against the Defendant, Honda Federal Credit Union, be, and is hereby, DISMISSED.