**In re Jerry/Dawn FREEMAN, Debtors.**

**No. 04–37209.**

United States Bankruptcy Court, N.D. Ohio.

June 1, 2005.

Vesper C. Williams, II, Toledo, OH, for debtors.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court after a Hearing on the Objection by the Creditor, Toledo Fire Fighters Federal Credit Union, to the Debtors' Motion for an Order directing the Turnover of Monies. Subsequent to the Hearing, each of the Parties submitted briefs in support of their respective positions. The Court has now had the opportunity to review the arguments raised both at the Hearing and in these Briefs, together with the applicable law, and based upon this review, the Court, for the reasons explained in this Decision, finds that the Debtor's Motion should be Denied.

The factual information giving rise to this controversy is not substantially in dispute. On August 27, 2004, the Debtors filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. In their petition, the Debtors set forth that it was their intention to reaffirm on a secured debt to the Creditor, Toledo Fire Fighters Credit Union. The underlying collateral for this debt was an automobile owned by the Debtors.

On the petition date, the Debtors owed $4,724.97 on their automobile loan with the Creditor. And at this same time, the Debtors also had two other obligations with the Creditor: $814.49 stemming from an overdraft; and $5,559.02 incurred on a

Visa account the Debtors maintained with the Creditor. Prior to the petition date, these obligations had been cross-collateralized with the Debtors' auto loan.

So as to facilitate their stated intention to reaffirm on their auto loan, the Debtors continued to make postpetition payments to the Creditor. This was accomplished through the use of an automated debit account the Debtors maintained with the Creditor. But, prior to any formal reaffirmation agreement being executed, the Creditor informed the Debtors that it would only agree to the reaffirmation of the auto loan on the condition that the Debtors also reaffirm on those two other debts cross-collateralized with its auto loan. The Debtors refused, thereafter surrendering their automobile to the Creditor. Based then upon this turn of events, the Creditor returned those postpetition funds it had received on account of the two cross-collateralized accounts; but it declined to return those funds paid solely on account of the auto loan. The Debtors, by way of their Motion for Turnover, now seek to have the Creditor return these funds.

## DISCUSSION

■ The Debtors' action for a return of those funds paid postpetition to the Creditor is one for turnover. As an initial point of order, however, a Chapter 7 debtor generally has no standing to bring an action for turnover. Section 542,[1] the general provision in the Bankruptcy Code governing turnover, confers this right upon the trustee; and then only to the extent that it pertains to estate property. *Schieffler v. Pulaski Bank & Trust (In re Moli-*

*tor)*, 183 B.R. 547, 554 (Bankr.E.D.Ark. 1995) (actions for the turnover of property of the estate inherently concern the issue of whether property is property of the bankruptcy estate); *In re Gunthorpe,* 280 B.R. 893, 895–96 (Bankr.S.D.Ala.2001) (turnover under § 542 is limited to estate property).

Although in certain limited circumstances, a Chapter 7 debtor may be afforded with the status of a bankruptcy trustee—for example, under delimitated conditions, § 522(h) allows a debtor to exercise a trustee's avoiding powers—such circumstances are not applicable here. And going a step further, it is highly questionable whether the property sought by the Debtors is even estate property, and thus the proper subject for turnover, as presumably those funds paid to the Creditor stem entirely from wages earned postpetition whose character then will fall entirely outside the scope of property of the estate. 11 U.S.C. § 541(a); *In re Hellums,* 772 F.2d 379, 381 (7th Cir.1985) (wages earned postpetition are not property of the estate). Yet, this lack of ability to bring an action for turnover does not mean that no remedy is available to the Debtors.

At the commencement of a bankruptcy case, a stay arises under § 362(a) which, simply put, enjoins any and all collection efforts against the debtor. Thus while the stay is in effect, any contact between a creditor and a debtor is potentially suspect. This is true notwithstanding the absence of any effect on the debtor's bankruptcy estate—the stay covers not only acts taken against estate property, but also affords a debtor protections when, as

---

1. In their *Motion,* the Debtors cited to 11 U.S.C. § 543 as authority for their Motion for Turnover. This section, however, deals solely with "custodians," which under the definition set forth in 11 U.S.C. § 101(11) will only

involve a third-person appointed under non-bankruptcy law to manage a debtor's assets. For example, an assignment for the benefit of creditors. § 101(11)(C).

in the current situation, a creditor seeks to apply nonestate assets as satisfaction for a prepetition debt. 11 U.S.C. § 362(a)(5)/(6).

Just as important, actions taken in violation of the stay are invalid; and so as to provide an enforcement mechanism, a debtor is afforded with a private right of action to seek redress for a stay violation. 11 U.S.C. § 362(h); *compare* § 524 (providing no private right of action for a violation of the discharge injunction). Among other things, the potential remedies available to a debtor when they have been harmed by a stay violation include exactly that which is sought by the Debtors in this matter: the return of the assets transferred. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir. 1993).

■ Given therefore the stay's overall operative legal structure, together with the lack of standing afforded to a debtor with respect to an action for turnover, the Debtors' action in seeking redress for their postpetition remuneration of a prepetition debt must necessarily be one for a violation of the automatic stay as set forth in 11 U.S.C. § 362(a), and not an action for turnover. And in light of the principle that matters should be decided on their substantive merits and not procedural technicalities, and so as to also afford judicial expediency to the matters raised by the Debtors, this controversy will be treated as an action for a violation of the automatic stay pursuant to this Court's authority under 11 U.S.C. § 105(a), together with Bankruptcy Rules 7015 and 9014. Pursuant to 28 U.S.C. § 157, a determination regarding the applicability of the stay, including a violation thereof, is deemed a core proceeding over which this Court has been conferred with the jurisdictional authority to enter final orders. 28 U.S.C. § 1334.

Having addressed the foregoing procedural point of order, the substantive issue now before the Court can be framed as this: whether a stay violation occurs when postpetition payments are made on a collateralized debt which, although stated by the debtor in their petition as a debt to be reaffirmed, was not ultimately reaffirmed? As now explained, the answer to this question is neither yes or no, but is rather dependent upon the particular factual circumstances of each case.

■ As already discussed, the automatic stay enjoins a creditor from attempting to recover on a prepetition debt, notwithstanding that the source of the payment comes entirely from a debtor's nonestate assets. Yet, as is also the situation at hand, when the reaffirmation of a debt is added into the mix, the absolute prohibitions of the automatic stay do no apply. As taken from the decision of the Sixth Circuit Court of Appeals in *Pertuso v. Ford Motor Credit Co.*:

> Courts considering § 362 claims have recognized that, taken to its logical extreme, this section could be read as prohibiting all contacts between creditors and debtors, including contacts regarding reaffirmation agreements. Such a reading would obviously undermine § 524(c), which permits reaffirmation agreements. The Seventh Circuit has concluded that § 362 is not automatically violated by sending a reaffirmation letter to a debtor, and we agree with that conclusion. Something more than mere contact must be alleged in order to state a claim under § 362.

233 F.3d 417, 423 (6th Cir.2000) (internal quotations and citations omitted). Recently, this Court restated this holding in these short terms: mere "contact between a debtor and creditor will not run afoul with § 362(a) so long as the contact is limited to

the reaffirmation process of § 524(c)." *Jacobs v. Honda Federal Credit Union (In re Jacobs)*, 321 B.R. 451, 453 (Bankr. N.D.Ohio 2004).

Although the factual circumstances presented in *Pertuso* were slightly different—*Pertuso* involved a creditor sending a proposed reaffirmation agreement—nothing would suggest that the Sixth Circuit's holding was so limited. The reasoning behind the *Pertuso* decision was simply one of practicality: that for a debt to be reaffirmed, some contact between a debtor and the creditor is necessary. And the same applies to the instant situation where, in anticipation to the reaffirmation of a debt, a creditor accepts postpetition payments for its collateral. The reasoning for this is simple: a creditor cannot be compelled to enter into a reaffirmation agreement, thus making a debtor's continued payment on the obligation a likely necessary inducement for the creditor's consent. Furthermore, if a debtor is not current on their obligation, a creditor is fully within their right to seek relief from the stay, thereby frustrating the reaffirmation process.

▇▇▇ Just the same, a creditor, under the guise of the reaffirmation process, is not afforded carte blanche immunity for its actions as it relates to the automatic stay. One of the purposes of the stay is to prevent creditor overreach. *Chambers v. GreenPoint Credit (In re Chambers)*, 324 B.R. 326, 329–30 (Bankr.N.D.Ohio 2005). And in direct recognition of this, the Court in *Pertuso* held that acts taken during the reaffirmation process may still constitute a stay violation if such acts, (1) could reasonably be expected to have a significant impact on the debtor's determination as to whether to repay, and (2) are contrary to what a reasonable person would consider to be fair under the circumstances. *Pertuso*, 233 F.3d at 423.

▇▇▇ In this matter, the Debtors' argument in support of a stay violation hinges on the Creditor engaging in a practice known as "linkage." In short, 'linkage' occurs when a creditor conditions the reaffirmation of one claim to another. *Jacobs v. Honda Fed. Cr. Union (In re Jacobs)*, 321 B.R. 451, 454 (Bankr.N.D.Ohio 2004). Usually a creditor will employ 'linkage,' this case being no exception, in the situation where one debt is secured—making reaffirmation necessary for the debtor to retain the collateral- and the other debt is unsecured—making reaffirmation unnecessary as the debt would be otherwise discharged. And looked at under this lens, there is simply no getting around the fact that 'linkage' will present a debtor with a "Hobson's choice:" forego the use of needed collateral; or pay significantly more for the collateral than what otherwise would be reasonably required. Thus, 'linkage' will most likely satisfy the first condition of the *Pertuso* test, as the need to retain encumbered property can be reasonably expected to have a significant impact on a debtor's determination as to whether to repay the debt.

▇▇▇ But in switching focus, this Court has previously held that the practice of 'linkage' does not constitute a *per se* violation of the automatic stay, pointing out:

> reaffirmation agreements are, for all practicable purposes, new contracts; creditors, or debtor's for that matter, are free to propose any new terms to the agreement. Thus, to adopt the Debtors' position potentially leads this Court down the slippery slope whereby any terms in a reaffirmation agreement which deviate from the parties' original agreement, and which do not otherwise inure to the benefit of the debtor, would have to be viewed as coercive in nature.

*In re Jacobs,* 321 at 455. This lack of any *per se* violation for 'linkage' is where the second portion of the *Pertuso* test takes on importance.

The second prong of the *Pertuso* test requires that, to establish a stay violation in the reaffirmation context, it must be shown that the creditor's actions are "contrary to what a reasonable person would consider to be fair under the circumstances." In opposition to the fairness of the Creditor's actions, the Debtors' position centers around two points. First, at the time they filed their bankruptcy petition, they had no knowledge that the Creditor would attempt to link the reaffirmation of its secured claim to its unsecured claims. Second, their payments to the Creditor were not voluntary because they were done through an automated deposit/withdraw system. Based, however, upon the weight of the following considerations, the Court is not convinced that these two considerations lead to the conclusion that anything would be inherently unfair in allowing the Creditor to retain those postpetition payments made by the Debtor.

First, from just a simple equity standpoint, during the time the Debtors made their monthly payments to the Creditor, the Debtors retained the use of their car. Practically speaking then, the relief requested by the Debtors asks that this Court provide them, at the Creditor's expense, the use of a car for free—effectively affording the Debtors a windfall. Principles of equity and fairness, of course, abhor such an outcome. Also with respect to just the Debtors' second position concerning the Creditor's continued billing, it has not gone unnoticed that the Creditor has since returned that portion of the funds it received on account of its two cross-collateralized obligations. Therefore, it cannot be said that the Creditor sought to unfairly take advantage of its attempt to link its debts. Similarly, the Debtors were presumably free at anytime to put a stop to the Creditor making automated withdraws from their account.

Secondly, with regards to notions of fairness, the Court is hesitant to punish the Creditor for what amounts to a misstatement by the Debtors regarding their reaffirmation of their automobile loan. Pursuant to § 521(2)(A), a Chapter 7 consumer-debtor, as a condition to obtaining the relief afforded by the Bankruptcy Code, is required to file a statement of their intent regarding their disposition of secured property, including whether they intended to reaffirm the debt or whether they will instead surrender the collateral. The purpose of this section is straightforward: to afford a creditor notice as to what action may be necessary to protect its interest in its collateral, including whether seeking relief from the stay would be an appropriate course of action. *In re Price,* 370 F.3d 362 (3rd Cir.2004). And while a debtor's failure to perform their statement of intent does not alone terminate the effect of the automatic stay, the notice function served by § 521(2)(A) means that a creditor can hardly be faulted for taking reasonable measures—including as here, the acceptance of payment—in reliance upon a debtor's stated intention. *See In re Powell,* 223 B.R. 225, 231–32 (Bankr.N.D.Ala. 1998).

Finally, as it regards the issue of fairness, the structure and aims of the Bankruptcy Code cannot be ignored. It has never been the policy of the Bankruptcy Code to prevent Debtors from voluntarily agreeing to repay their debts. Section 524(f) of the Code encapsulates this policy by providing, "[n]othing ... prevents a debtor from voluntarily repaying any debt." And while this section is not technically applicable in this case, applying only upon discharge, its principle still is:

debtors should be encouraged to pay their debts. *In re Harrell*, 318 B.R. 692, 696 (Bankr.E.D.Ark.2005) (Congressional policy favoring Chapter 13 whereby debtors repay their debts).

Therefore, in conclusion, since both parts of the *Pertuso* test must be met before a creditor's actions during the reaffirmation process may be deemed to have resulted in a § 362(a) stay violation, and since the second part of this test has not been established in this matter, the Debtors' action to have the Creditor return those funds paid on their auto debt postpetition cannot be sustained.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the Debtors, Jerry and Dawn Freeman, for the Turnover of Monies, be, and is hereby, DENIED.

